

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00203-CR

_____

DUSTIN JUDD LAMB, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 28012

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

OPINION

Following Dustin Judd Lamb's indictment for the offense of online solicitation of a minor, Lamb filed three pretrial motions to suppress evidence[1] that were denied by the trial court. Lamb thereafter entered into a plea agreement with the State, and the trial court placed him on deferred adjudication community supervision for a period of ten years and imposed a $1,000.00 fine. In a single appellate issue, Lamb contends that the trial court erred in denying his motion to suppress "the cell phones seized from [his] person and vehicle." Because we find that the trial court erred in denying Lamb's motion to suppress evidence of the cell phone seized from Lamb's person and because that error was harmful, we reverse the trial court's judgment and remand for a new trial.

I. Background

G.P., a minor who was trading Instagram messages with forty-three-year-old Lamb, attempted suicide after her mother confronted her about those sexually explicit exchanges. Officer Jeremy Massey of the Reno Police Department investigated the incident and learned that G.P. and Lamb had been exchanging sexually explicit private messages on Instagram and that G.P. told Lamb that she was fifteen years old. Further investigation revealed that Lamb attempted to claim that his son sent the messages, but the timing of the messages precluded that likelihood.

Based on this information, among other things, Massey executed an affidavit seeking a search warrant of Lamb's property located at 120 County Road 12550 in Lamar County. The affidavit more particularly described the property as "[a] location known as 120 County Road

---

[1]Lamb filed a motion to (1) suppress all evidence seized in the search of his person and vehicle, (2) suppress digital data on his improperly seized cell phone, and (3) suppress oral statements recorded by law enforcement while conducting a search of 120 County Road 12550, Lamar County. The initial motion sought suppression of all evidence seized in the search of Lamb's person and vehicle parked in front of 120 County Road 12550, Lamar County.

12550, Lamar County[,] TX." The affidavit continued, "The location has a brown wooden shop with the east side painted beige with a white camper trailer parked beside it. The address is displayed in front of the home on the mailbox." The affidavit further stated that Massey had probable cause to believe that "the occupant(s)[2] of the suspect location [was/were] in the possession of cellular telephones, computers, and digital media storage devices that may contain sexually explicit material and messages with a minor child" and requested "a search warrant for the described property, including any and all outbuildings and motor vehicles."

Based on Massey's affidavit, a search warrant was issued commanding entry onto "120 County Road 12550, Lamar County, Texas[,] described in said affidavit and there search for the property described in said affidavit and to seize same named in the affidavit."

At the suppression hearing, Massey testified that no one was on the premises when he and three other police officers arrived at 120 County Road 12550 to execute the search warrant. According to Massey, Lamb arrived during the course of the search, pulled off the county road, and parked. Massey could not testify as to the location of the property line and could not say whether Lamb's vehicle was on the property described in the search warrant. Justin Hicks, Massey's neighbor and relative, testified that he drove by the property located at County Road 12550 on the day of the search and noticed several squad cars there. He saw Lamb standing in the road by his truck and stopped to talk with him. Hicks testified that Lamb was parked "in the road" and was standing "in the center of the road" leaning on his truck. There were three or four squad

---

[2]Those listed as "in charge of" this location were Lamb and Joshua Phillip Lamb.

cars parked in Lamb's driveway blocking the entrance. According to Hicks, Lamb's truck was not in the ditch, but it was on the road surface.

When Lamb got out of his vehicle and asked the officers what was going on, Massey believed that he and Lamb were both on the property described in the warrant. Massey believed that because Lamb parked his car on the gravel and not on the road that the car was also on the premises described in the warrant. The car was parked next to a small drainage ditch. Although the search warrant did not authorize a search of Lamb's person, and Massey was aware of that fact, Massey removed Lamb's cell phone from Lamb's back pocket. This action is reflected in Massey's chain-of-custody report. After Massey confiscated Lamb's cell phone, he directed the other officers to conduct a search of Lamb's vehicle.

The search of Lamb's vehicle resulted in the seizure of a second cell phone, a stealth cam, an SD card reader, an Olympus recorder, and a Taurus pistol. Massey admitted that the only basis for the search and seizure was the warrant. Lamb was arrested at the scene based on his confession.

Lamb challenges the trial court's denial of his motion to suppress evidence of the two cell phones. The trial court certified Lamb's right to appeal the denial of his motion to suppress, and this appeal timely ensued.

## II.     Standard of Review

We review a trial court's decision on a motion to suppress under a mixed standard of review. "We give almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on credibility and demeanor while we review *de novo* application-of-law-to-fact questions that do not turn on credibility and demeanor."

4

*Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *see Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We must affirm the decision if it "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Brito-Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *see Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

## III. Analysis

Lamb claims that the search warrant did not authorize the search of his vehicle or the confiscation of his cell phone from his person.

### A. The Search of Lamb's Vehicle Was Constitutionally Permissible

Lamb claims that the search of his vehicle exceeded the scope of the warrant because at the time of the search, his vehicle was not located on the premises to be searched as described in the warrant. "The scope of a search warrant is governed by the terms of the warrant, and the scope includes spatial restrictions as well as the items to be seized." *Drayton v. State*, 559 S.W.3d 722, 726 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (citing *Zarychta v. State*, 44 S.W.3d 155, 166 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd)). "A search made under the authority of a search warrant may extend to the entire area covered by the warrant's description." *Long v. State*, 132 S.W.3d 443, 448 (Tex. Crim. App. 2004) (quoting Wayne R. LaFave, Search and Seizure, § 4.10(a) at 654 (3d ed.1996)). "When courts examine the description of the place to be searched to determine the warrant's scope, they follow a common sense and practical approach, not a 'Procrustean' or overly technical one." *Id.* (citing *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *Ker v. California*, 374 U.S. 23, 33 (1963)). When the scope of the search is challenged

5

based on the location of the search, "the officer[] must show that [he was] properly in the place where the item was found," either on the basis of the search warrant or under the authority of an exception to the warrant requirement. *Snider v. State*, 681 S.W.2d 60, 63 (Tex. Crim. App. 1984); *see Swink v. State*, 747 S.W.2d 53, 54 (Tex. App.—Texarkana 1988, no pet.).

The search warrant specifically authorized the search of any and all motor vehicles[3] located on the premises of 120 County Road 12550, Lamar County, Texas. Massey's testimony at the suppression hearing revealed that Lamb "pulled off the county road onto the property on the property line there." Although Massey did not know where the surveyed property line was located, he testified that Lamb left the roadway or what he would "consider the actual road, the gravel or pavement and onto the grass." Massey testified that he believed that to be the yard of the premises described in the search warrant.

Although the record before us does not definitively answer the question of whether Lamb's vehicle was parked on the premises of 120 County Road 12550 at the time of the search, Massey's testimony indicates that he was on the premises pursuant to a valid search warrant[4] and that he believed that Lamb's vehicle was located on the premises or curtilage of his property. Even if Massey was mistaken in this belief, the search was nevertheless valid if it was reasonable. "What is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant [or] the police officer executing a warrant . . . is not that they always be correct, but they always be reasonable." *Illinois v. Rodriguez*,

---

[3]When an affidavit is attached to the warrant, as it was in this case, the documents are considered together as defining the place to be searched. *Long*, 132 S.W.3d at 447 n.11.

[4]Lamb does not challenge the validity of the warrant.

497 U.S. 177, 185 (1990) (no Fourth Amendment violation when police made warrantless search of apartment based on reasonable belief that they had valid consent to search when they did not). The *Brinegar* Court explained the requirement of reasonableness in a way that is particularly apt here: "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable [persons], acting on facts leading sensibly to their conclusions of probability." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). This is because "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Rodriguez*, 497 U.S. at 185. The record here adequately demonstrates the objective reasonableness of Massey's interpretation of the scope of the warrant. *See United States v. Patterson*, 278 F.3d 315, 318 (4th Cir. 2002) (search of car legal when officer reasonably believed that gravel area in front of property was part of premises encompassed within warrant). We, therefore, find no Fourth Amendment violation resulting from the search of Lamb's vehicle. *See id.*

**B.     The Search of Lamb's Person Was Constitutionally Impermissible**

Next, Lamb claims that the seizure of his cell phone from his person exceeded the scope of the warrant because, to justify the search of a person, that person must be named in the search warrant. It is undisputed that Lamb was not named in the warrant.[5]

Massey testified that after Lamb arrived on the property, he stepped out of his vehicle and asked what was going on. The State asked Massey,

---

[5]The affidavit averred that the suspected place was controlled by Justin David Lamb and Joshua Phillip Lamb. It did not request authorization to search Lamb. Instead, the affidavit requested a search warrant "for the described property, including any and all outbuildings and motor vehicles."

> Q: And you located a cell phone in his back pocket. How did you come across that cell phone? Was there a pat down? Did you see it sticking out of his pocket?
>
> A: I want to say that I asked if he had one but I'm not certain.

Massey then removed the cell phone from the back pocket of Lamb's person.[6] When he did this, he was aware that the search warrant did not authorize the search of Lamb's person, only the property. After Massey took the phone from Lamb's pocket, he directed the other officers to search the vehicle and asked Lamb to speak with him about the case. Lamb agreed, and the two stood by the vehicle and talked. Following that conversation, which only happened, according to Massey, after he removed the cell phone from Lamb's pocket, Massey arrested Lamb based on his confession.

"In general, to comply with the Fourth Amendment,[7] a search of a person pursuant to a criminal investigation (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances." *State v. Villarreal*, 475 S.W.3d 784, 795 (Tex. Crim. App. 2014). "Specifically, with respect to searches of people undertaken for the purpose of furthering a criminal investigation, the United States Supreme Court has determined that, in the absence of a search warrant, a 'search of the person is reasonable only if it falls within a recognized exception' to the warrant requirement." *Id*. at 796 (quoting *Missouri v. McNeely*, 569 U.S. 141, 148 (2013)).

---

[6]Massey repeatedly testified that he took a cell phone from Lamb's back pocket.

[7]The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue" unless certain requirements are met. U.S. CONST. amend. IV; *see also* TEX. CONST. art. I, § 9.

Lamb relies on *Ybarra v. Illinois*, in which officers executed a search warrant authorizing the search of a tavern and of the bartender, "Greg." *Ybarra v. Illinois*, 444 U.S. 85, 88 (1979). In executing the warrant, the police detained and searched all the tavern's customers. The search of Ybarra, one of the tavern's customers, uncovered narcotics on his person.[8] *Id*. at 89. The Court held that the search was invalid because officers had no reason to believe Ybarra "had any special connection with the premises, and the police had no other basis for suspecting that he was armed or in possession of contraband." *Michigan v. Summers*, 452 U.S. 692, 695 n.4 (1981) (holding that occupant of searched premises can be detained incident to execution of search warrant because constructive control over premises proves sufficient connection with suspected illegal activities to permit detention); *see Lippert v. State*, 664 S.W.2d 712, 720 (Tex. Crim. App. 1984). "*Ybarra* limits the principle that a premises warrant authorizes police to search any item that might contain the object of the search by holding that the warrant does not authorize the search of a person it does not name," *State v. Merritt*, 567 S.W.3d 778, 782 (Tex. App.—San Antonio 2018, no pet.) (citing *Ybarra*, 444 U.S. at 92–93), because "searches of a person involve a higher degree of intrusiveness and require justification in addition to that provided by the probable cause that supports a premises warrant." *Id*.[9]

---

[8] The search was conducted pursuant to an Illinois statute that authorized the search of persons found on premises described in a warrant only if there was "some showing of a connection with those premises, that the police officer reasonably suspected an attack, or that the person searched would destroy or conceal items described in the warrant." *Ybarra*, 444 U.S. at 89.

[9] Before the *Ybarra* decision, an officer executing a valid search warrant in Texas "had the right to search all persons found on the premises during the execution of the warrant." *Bell v. State*, 845 S.W.2d 454, 457 (Tex. App.—Austin 1993, no pet.) (warrant authorizing house search and arrest of occupant and "other persons whose names and identities are unknown" did not authorize search of person on porch when that person was not occupant of house and not named in warrant) (citing *Rice v. State*, 548 S.W.2d 725 (Tex. Crim. App. 1977); *Hernandez v. State*, 437 S.W.2d 831 (Tex. Crim. App. 1968)).

Here, the affidavit described Lamb as having a special connection with the premises because he was alleged to have been in control of the premises. Because of this "special connection," Lamb was clearly subject to detention incident to the execution of the search warrant. *See Summers*, 452 U.S. at 695. It does not follow, though, that the warrant implicitly included the authority to search Lamb.[10] The mention of Ybarra's lack of a special connection to the tavern must be read in the context of that case. There, the search warrant specifically authorized not only a search of the tavern, but also of the tavern's bartender, Greg. And, while the bartender indeed had a special connection to the premises, he was properly listed in the warrant as a subject of the search. Here, Lamb was not identified in the warrant as a subject of the search. *See Samuel v. State*, 895 S.W.2d 487, 489 (Tex. App.—Austin 1995, no pet.) (warrant to search premises and to arrest and search specified individuals does not carry with it authority to search persons found on premises); *Lippert v. State*, 664 S.W.2d 712, 721–22 (Tex. Crim. App. 1984) (suspect's mere presence on premises during execution of warrant insufficient to justify detention or arrest).

Because the warrant did not authorize the search of Lamb's person, Lamb met the initial burden to prove the search occurred without a warrant. *See Neal v. State*, 256 S.W.3d 264, 282

---

[10]That very argument was advanced by the State in *Summers*. In that case, officers were preparing to execute a warrant to search a certain house for narcotics when they encountered Summers leaving the house. Summers lived at the residence, and the officers asked him for assistance in gaining entry. After opening the door for the officers, Summers was detained while officers searched his house. *Summers*, 452 U.S. at 693. After finding narcotics in the basement, officers arrested Summers, searched him, and found heroin on his person. *Id*. Summers moved to suppress the heroin as the product of an illegal search, and that motion was granted and affirmed through the Michigan Supreme Court. In reversing, the Supreme Court determined that the dispositive issue was whether Summers's initial detention was an unreasonable seizure of his person. *Id*. at 694. The State attempted to justify the eventual search of Summers's person by claiming that the premises warrant implicitly included authority to search persons on those premises. Because Summers's initial detention was permissible, the Court did not reach the question of whether a premises warrant includes the right to search persons found there, because when the police searched Summers, they had probable cause to arrest him and had done so. *Id*. at 695.

(Tex. Crim. App. 2008). Consequently, the State was tasked with the burden of justifying the warrantless search by proving an exception to the warrant requirement.[11] *Id.*; *United States v. Roach*, 5 F.3d 894, 897 (5th Cir. 2000) ("When a warrantless search or seizure is conducted, the burden shifts to the government to justify the warrantless search."). The State has made no effort to satisfy this burden, and we find no evidence of any such exception to the requirement of a search warrant in the record before us.

The exceptions to the rule that a search must rest upon a search warrant "have been jealously and carefully drawn." *Jones v. United States*, 357 U.S. 493, 499 (1958). Among those exceptions are "voluntary consent to search" and "search under exigent circumstances." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). "For example, if police have probable cause coupled with an exigent circumstance, or they have obtained voluntary consent, or they conduct a search incident to a lawful arrest, the Fourth Amendment will tolerate a warrantless search." *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) (citing *McGee*, 105 S.W.3d at 615).

"Under Texas law, the State must prove voluntary consent by clear and convincing evidence." *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). There is no evidence in the record before us that Lamb consented to the removal of his cell phone from his person.

---

[11]The State contends, though, that because the search warrant specifically identified "cellular telephones" as one of the objects of the search, it was reasonable for Massey to remove the cell phone from Lamb's back pocket. In light of clear Supreme Court authority that a warrantless search of a person must fall within a recognized exception to the warrant requirement, we find no merit in this argument. Massey's belief that the warrant alone authorized him to remove Lamb's cell phone from his person does not fall within a recognized exception to the warrant requirement. Further, Massey testified that he was aware that the warrant did not authorize a search of Lamb's person.

Exigent circumstances are those "exigencies of the situation" that "make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). A warrantless search based on exigent circumstances requires probable cause to conduct the search plus an exigency requiring an immediate search. Such exigencies include the provision of aid or assistance to those in need of assistance, protecting law enforcement officers from those believed to be armed and dangerous, and preventing the destruction of evidence. *Gutierrez*, 221 S.W.3d at 685. The State does not claim that exigent circumstances justified the search of Lamb's person, and the record does not indicate the presence of exigent circumstances.

There is also no claim that the cell phone was in plain view, and there is no evidence in the record that would support the seizure of the cell phone under the plain view doctrine. *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) ("[I]f contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no search within the meaning of the Fourth Amendment."). And, in light of Massey's testimony that Lamb was arrested only after the cell phone was confiscated, this was not a search incident to arrest. Likewise, the record is devoid of evidence that Massey conducted a *Terry*[12] pat down of Lamb for weapons.

---

[12]*Terry v. Ohio*, 392 U.S. 1, 21–24 (1968) (authorizing officers to conduct reasonable frisk for weapons when officer reasonably believes person is armed and presently dangerous).

Because the State failed to carry its burden to prove that an exception to the requirement of a search warrant applies—and the record here supports no such exception—the search of Lamb's person was constitutionally impermissible.[13]

## IV. Harm Analysis

We review the harm resulting from a trial court's erroneous denial of a motion to suppress obtained in violation of the Fourth Amendment under the constitutional harmless-error standard. TEX. R. APP. P. 44.2(a); *see Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001) (requiring application of constitutional harmless-error standard to analysis of trial court's erroneous denial of motion to suppress under Fourth Amendment). Under Rule 44.2(a), we must reverse the conviction unless we conclude "beyond a reasonable doubt that the error did not contribute to the conviction or the punishment." TEX. R. APP. P. 44.2(a). "Under this rule, the burden is on the State to prove that the error made no contribution to the defendant's conviction or punishment." *Williams v. State*, 958 S.W.2d 186, 194 n.9 (Tex. Crim. App. 1997); *see Chapman v. California*, 386 U.S. 18, 24 (1967) (beneficiary of constitutional error must prove beyond reasonable doubt that error did not contribute to verdict): *Morris v. State*, 554 S.W.3d 98, 124

---

[13]In *State v. Johnson*, we held that the attenuation doctrine "continues to exist in Texas" notwithstanding the enactment of Article 38.23 of the Texas Code of Criminal Procedure (the Texas statutory exclusionary rule). *State v. Johnson*, 843 S.W.2d 252, 258 (Tex. App.—Texarkana 1992), *aff'd*, 871 S.W.2d 744 (Tex. Crim. App. 1994) (citing TEX. CODE CRIM. PROC. ANN. art. 38.23). Thus, the attenuation doctrine is generally relevant to the question of whether a trial court erred in denying a motion to suppress evidence based on a constitutional violation. Nevertheless, the attenuation doctrine only applies where there are intervening circumstances between the constitutional violation and the acquisition of the evidence. For example, in *Johnson*, the defendant was arrested without a warrant, but before he gave his statement, the police obtained a warrant and he was given his *Miranda* rights. *Id*. at 260. Here, there are no intervening circumstances. The cell phone was acquired by the officer's Fourth Amendment violation of taking the cell phone from Lamb's pocket without a warrant. Therefore, the attenuation doctrine does not apply to this case.

(Tex. App.—El Paso 2018, pet. ref'd) (burden on State to show error is harmless); *Crosson v. State*, 36 S.W.3d 642 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).[14]

In the instant case, the complained-of evidence was the cell phone removed from Lamb's back pocket.[15] The State had the burden to show that the trial court's error in failing to suppress this cell phone did not contribute to Lamb's conviction or punishment. Yet, the record does not disclose what evidence, if any, was contained on this cell phone, and the State's appellate brief does not address the issue of harm. The record reflects, however, that after the trial court denied Lamb's motion to suppress, Lamb decided to plead guilty. On this record, we cannot determine beyond a reasonable doubt that the trial court's constitutional error in failing to grant Lamb's motion to suppress the cell phone taken from his pocket did not contribute to Lamb's decision to plead guilty and thus to his judgment of deferred adjudication. *See Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2009) (finding that trial court's failure to permit defendants to present a defense could not be determined, beyond a reasonable doubt, not to have contributed to decision to enter pleas resulting in conviction); *McKenna v. State*, 780 S.W.2d 797, 799–800 (Tex.

---

[14]While the attenuation doctrine is relevant to the question of whether the trial court erred in denying the motion to suppress, that doctrine is not applicable to a harmless error analysis. Attenuation concerns the question of whether the trial court erred in admitting or excluding the evidence. The harmless error doctrine assumes that the trial court erred in admitting the evidence and asks whether that error was harmless. To apply the attenuation concept to Rule 44.2(a) could lead to an absurd finding that a trial court erred in admitting illegally obtained evidence, but that error was harmless because, under the attenuation doctrine, the trial court did not err in admitting the evidence.

[15]We interpret this complaint as necessarily inclusive of the data contained on the cell phone. *See* TEX. R. APP. P. 38.1(f) (statement of issue "will be treated as covering every subsidiary question that is fairly included").

Crim. App. 1989) (defendant pled guilty after his suppression motion was denied because State preserved option to use contested evidence to establish elements of offense).[16]

The trial court erred in denying Lamb's motion to suppress evidence of the cell phone taken from his back pocket during a warrantless search. Because we cannot conclude, beyond a reasonable doubt, that this ruling did not contribute to Lamb's guilty plea and resulting judgment of deferred adjudication, we reverse the trial court's judgment.

## IV.    Conclusion

Although the trial court did not err in refusing to suppress evidence of the cell phone removed from Lamb's vehicle, we must nevertheless reverse the trial court's judgment in light of the trial court's error in refusing to suppress evidence of the cell phone removed from Lamb's pocket.

---

[16]As noted, in considering harmless error, the State bears the burden of showing "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P 44.2(a); *Chapman*, 386 U.S. at 24. In *Harris v. State*, the Texas Court of Criminal Appeals identified certain factors relevant to considering whether error is harmless, and in *Snowden v. State*, the Court of Criminal Appeals modified those factors. *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex. Crim. App. 1989), *modified by Snowden v. State*, 353 S.W.3d 815, 821–22 (Tex. Crim. App. 2011). Nevertheless, while the *Harris/Snowden* factors are relevant to that determination of whether error is harmless under Rule 44.2(a), the State in this case did not brief the issue or argue those factors. For us to independently review the evidence to evaluate the *Harris/Snowden* factors when the State offered nothing to meet its burden would undermine the State's burden of proof requirement required by *Chapman*. *See Merritt v. State*, 982 S.W.2d 634, 636 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ("[Under Rule 44.2(a),] the 'default' is to reverse unless harmlessness is shown. Thus, if neither party does anything, the case will be reversed. This requires the State to come forward with reasons why the appellate court should find the error harmless.") (citing *Arnold v. State*, 786 S.W.2d 295, 298 (Tex. Crim. App. 1990)). Moreover, it would place us in the position of being an advocate for the State. *See Meyer v. State*, 310 S.W.3d 24, 26 (Tex. App.—Texarkana 2010, no pet.) ("[T]his Court does not act on behalf of the State. We do not, and cannot, create arguments for parties—we are neither the appellant's nor the appellee's advocate."). Accordingly, we decline to independently evaluate the *Harris/Snowden* factors in the absence of any briefing by the State asserting harmless error.

We reverse the trial court's judgment and remand to the trial court for a new trial in accordance with this opinion.

Ralph K. Burgess
Justice

Date Submitted:     March 5, 2020
Date Decided:       April 17, 2020

Publish